IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HOWARD HINES              * | |
|       Plaintiff, | |
|   v.                          * | CIVIL ACTION NO. PJM-06-2256 |
| STATE OF MARYLAND         * | |
| WILLIAM L. WILLIAMS, WARDEN | |
| PARRIS N. GLENDENING       * | |
| MELANIE C. PEREIRA | |
| SANDRA L. FOY              * | |
|       Defendants. | |
|                   ***    | |

**MEMORANDUM OPINION**

I.    Procedural History

Plaintiff filed an original and supplement Complaint in August and October of 2006, while confined at the Maryland House of Correction[1] ("MHC") in Jessup, Maryland.[2] Paper Nos. 1 & 9. His allegations raise failure-to-protect claims. Plaintiff states that since 1997, when he was subpoenaed to appear as a witness against David Clinton Berry in a criminal proceeding, he has been labeled a "snitch" by Berry and other inmates. He complains that State's Attorney Foy knew of his "position" yet still compelled him to testify without regard for his safety.[3] Plaintiff further alleges that the Warden, Commissioner, and Division of Correction were aware of the incident, yet

---

[1] The Court takes judicial notice that MHC was closed in March of 2007.

[2] The Maryland Division of Data Processing states that Plaintiff was transferred out of the Maryland House of Correction on March 9, 2007, and as of May 8, 2007, is confined at the Jessup Correctional Institution.

[3] According to Plaintiff, Berry was convicted of sending a threatening letter to former Governor Parris Glendening and sentenced to 3 years. Paper No. 9. The Maryland circuit court docket shows that in January of 1999, Berry was convicted of threatening to injure a state official, in violation of Md. Code Ann., Art. 27, § 561A. *See State v. Berry*, Case Number: 02K98000143 (Circuit Court for Anne Arundel County).

overlooked the warning and twice housed Berry at the same facility where Plaintiff was held.[4] He asserts that he became aware of threats from Berry, Leon Little, Merrick Stedman, several Crips gang members, and other unidentified inmates.

Plaintiff states that on Jun 23, 2006, he was attacked upon returning from the central shower room area by a group of inmates. He states that inmate Edward Borrero, who he previously did not know by name, stabbed him, and that Borrero carried out the attack at the behest of gang member Stedman. He asserts that the shower room area was unstaffed at the time and the stabbing occurred over a one minute period. Plaintiff seeks commutation of his life sentence or transfer to the State of Alabama, along with compensatory and punitive damages, for injuries sustained in the attack.

After receipt of a Court-ordered show cause response,[5] Plaintiff's request for injunctive relief was denied and Defendants were ordered to file an answer to the Complaints. On February 20, 2007, Defendants State of Maryland, Warden Williams, and former Governor Glendening filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[6] Paper No. 18. Plaintiff has filed a traverse thereto. Paper No. 23. The matter is ready for consideration and may be determined without oral hearing. *See* Local Rule 105.6 (D. Md. 2004).

II.     Standard of Review

---

[4] Plaintiff acknowledges that prison staff twice took action to ensure that Berry was moved out of general population at the same prison. Paper Nos. 1 & 9.

[5] The show cause response indicates that Berry was not housed at the MHC; that inmates Stedman and Borrero had been transferred out of MHC to the Maryland Correctional Adjustment Center in June of 2006; and that Plaintiff remained housed on MHC administrative segregation, pending his transfer to any maximum security facility. Paper No. 10. The Court therefore deemed injunctive relief unwarranted. Paper No. 13.

[6] Service of Process was not effected on Defendants Pereira and Foy.

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III.   Analysis

Defendants State of Maryland, Williams, and Glendening assert that Plaintiff's claims are subject to dismissal on grounds of Eleventh Amendment immunity and the failure to demonstrate that Defendants were indifferent to a substantial risk of harm. In his Traverse, Plaintiff claims that

3

Defendants Foy and Pereira were directly involved in compelling him to testify as a witness for the State and that the Governor's Office knowingly placed him an unsafe position. He further disputes the Defendants' statements regarding his movement off administrative segregation in January of 2007, and again seeks sentence commutation or transfer out of state through the Interstate Corrections Compact ("ICC").[7] Plaintiff further claims that Defendants have provided no investigative documents regarding the June 23, 2006 assault.

Defendants' Motion to Dismiss shall be granted. First, neither the State nor an arm of the State is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, the Eleventh Amendment bars suit for monetary damages in federal court by a private individual against an unconsenting state or its agencies, absent waiver or congressional abrogation of sovereign immunity pursuant to section five of the Fourteenth Amendment. *See Seminole Tribe v. Florida*, 517 U.S. 44, 56-58 (1996); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984). Further, Plaintiff has failed to set out any facts in support of a damage claim as to Defendants Williams and Glendening. To meet the standard for establishing a failure-to-protect damage claim under the Eighth Amendment, Plaintiff must, at a minimum, present facts alleging that Williams and Glendening knew of and disregarded an excessive risk to his health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997). Where, as here, Plaintiff names the chief executive officer of the State of Maryland and the former chief administrative officer at

---

[7] The primary focus of Plaintiff's Traverse is to: discuss the legality of his conviction, the length of time he has put in on his life sentence, the refusal to commute his sentence or to transfer him through the ICC, and the rehabilitative programming he has availed himself of while confined. Paper No. 23.

MHC, he must show that Defendants were personally involved in the alleged violation to establish liability under § 1983. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).[8] This he cannot do.

There is no dispute that in 1997, Plaintiff was subpoenaed to testify in a criminal proceeding in the Circuit Court for Anne Arundel County against fellow inmate David Clinton Berry. It was charged that Berry had written a threatening letter to Governor Glendening and signed Plaintiff's name. Paper No. 10, Ex. 1. At the criminal trial, handwriting analysis evidence was submitted which linked the handwriting to Berry. *Id*. Plaintiff states he was compelled to testify against Berry, Berry has since labeled him a snitch, and he has been subject to threats from Berry and his cohorts.

The record presented here shows that in 2000, Berry was placed on Plaintiff's OBSCIS enemies list. Plaintiff claims, and it is not refuted, that on two undated occasions, Berry was moved into the same prison, only to be transferred out by prison staff when the enemies conflict was noted. No incidents occurred between Plaintiff and Berry. Approximately nine years after Plaintiff claims he was subpoenaed to testify against Berry, he was stabbed by inmates on June 23, 2006. The primary assailant, David Borrero, was immediately transferred to a super-maximum facility, as was Merrick Stedman. It is not precisely clear what Stedman's involvement was in the incident and what, if any connection the assault had to the 1997 criminal proceeding against David Berry. Plaintiff was placed on segregation pending transfer to another maximum security setting. In January of 2007, Plaintiff was removed from administrative segregation and assigned to the job bank at the Maryland House of Correction. He is now confined at the Jessup Correctional Institution.

---

[8] Alternatively, to establish supervisory liability, Plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by plaintiff. *See Shaw*, 13 F.3d at 799.

Defendants offer a rather conclusory defense, arguing that "there is simply no evidence that [they] were deliberately indifferent to a substantial risk of serious harm, and disregarded that risk." Instead, they point to prior language used by this Court regarding the unfortunate and all too common daily occurrences of confrontation in a prison setting and maintain that necessary action was taken after the June, 2007 assault to ensure Plaintiff's safety.

Notwithstanding this profunctory defense, Defendants Williams and Glendening's Motion shall be granted. In filing his Complaint against the Warden and former Governor, Plaintiff offers no particularized claims as to how Williams and Glendening were placed on personal notice of his safety needs and the alleged omnipresent threat from Berry and how they then, with the necessary intentional state of mind, disregarded that threat. This Court is hardpressed to conclude that either Defendant is personally liable.[9] Although the 1997 events which precipitated Plaintiff's problems with Berry-- the threatening letter to Governor Glendening, the issuance of the subpoena, and the ensuing criminal proceedings-- involved a threat to the Governor's Office, this does not enmesh the former governor in an Eighth Amendment claim. Plaintiff's claim against former Warden Williams is equally weak. Aside from generally claiming that Division of Correction personnel were aware of his problems, Plaintiff does not allege or show how former Warden Williams had knowledge of threats from other named inmates. Indeed, Plaintiff remained housed in the Jessup area for nine years after the issuance of his subpoena, without incident. The facts presented to this Court fail to support Plaintiff's claims against Defendants Glendening and Williams.[10]

---

[9]   Further, Plaintiff has failed to allege any grounds which establish supervisory liability

[10]   The Court notes that Defendant Pereira has been the Director of the Howard County Detention Center since approximately 1999. Plaintiff claims that Pereira was the Deputy Commissioner of Corrections when he was compelled to testify in 1997. He fails to present any particularized claims showing Pereira's personal or supervisory involvement in his security. Further, Defendant Foy (Howell), an Assistant State's Attorney, cannot be held liable for her decision to subpoena Plaintiff's testimony at Berry's 1997 criminal trial. A prosecutor is a quasi-judicial officer who enjoys absolute immunity when performing

IV. Conclusion

      For the aforementioned reasons, Defendants State of Maryland, Williams, and Glendening's Motion to Dismiss shall be granted. The complaint against Defendants Pereira and Foy shall be dismissed. A separate Order shall be entered reflecting the rulings set out in this Memorandum Opinion.

/s/
ALEXANDER WILLIAMS, JR.
FOR
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 14, 2007

---

prosecutorial, as opposed to investigative or administrative, functions. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Springmen v. Williams*, 122 F.3d 211, 212-13 (4th Cir. 1997); *Lyles v. Sparks*, 79 F.3d 372, 376-77 (4th Cir. 1996). Finally, as Plaintiff's conclusory allegations against these Defendants seemingly go to incidents occurring in 1997, there is some question as to whether his § 1983 claims against Pereira and Foy are timely under the applicable statute of limitations. For these reasons, the claims against Pereira and Foy shall be dismissed.